391 So.2d 828 (1980)
STATE of Louisiana
v.
Cecil Lavon BEATTY.
No. 67419.
Supreme Court of Louisiana.
November 10, 1980.
*829 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Sturgeon, Dist. Atty., Glenn Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
C. Frank Holthaus, Boren, Holthaus & Perez, Baton Rouge, for defendant-appellant.
LEMMON, Justice.
In this appeal from convictions of separate offenses of distribution of marijuana and possession of marijuana with intent to distribute and from the sentences imposed, defendant urges trial court error in denying his motion to withdraw the guilty pleas, in imposing an excessive sentence, and in failing to comply with the sentencing guidelines of C.Cr.P. art. 894.1.
Facts
In February, 1978 defendant was arrested for distributing marijuana in October, 1977 and was released on bail. Formal charges were filed in April, 1978, but, for reasons not explained in the record, no action was taken on the bill of information for 18 months.
In July, 1979 defendant was again arrested, this time for possession of marijuana with intent to distribute. A local newspaper thereafter published an editorial critical of the district attorney for not taking more expeditious action in cases of controlled substance violations, mentioning defendant's case by name.
Shortly thereafter, on August 6, 1979, the state moved to set the distribution case for trial. Defendant was arraigned on August 8, 1979, and the matter was set for trial on September 17, 1979.
At trial defense counsel orally moved for a continuance, citing his client's poor health and his own lack of preparation. The trial judge denied the motion, and the case proceeded to trial. On the second day of trial, plea negotiations were renewed during the noon recess, and an agreement was reached. Defendant agreed to plead guilty to the charge of distribution of marijuana then being tried, as well as to the pending charge of possession of marijuana with intent to distribute. The prosecution in turn agreed not to pursue charges against defendant's wife. Both sides further agreed to a recommended sentence of five years on each count, with the two sentences to be served concurrently.
The trial judge apparently accepted the recommended plea bargain, and during the colloquy leading to the guilty plea the trial *830 court advised defendant that he would impose the five-year concurrent sentence in accordance with the agreement. The trial judge personally examined defendant in conformity with the jurisprudential guidelines set forth in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971) and accepted the guilty plea, concluding that defendant was knowingly and voluntarily entering the plea.[1] Defendant was released on bail pending sentence. See La. Const. art. 1, § 18 (1974); State v. Glass, 389 So.2d 398 (La.1980); C.Cr.P. art. 314.
Defendant thereafter changed lawyers and apparently entertained second thoughts about his plea agreement. On the date set for sentencing, defendant filed a motion to withdraw his guilty plea, but the trial court denied the motion and imposed sentence in conformity with the plea agreement.[2]
Motion to Withdraw Guilty Plea[3]
Defense counsel imaginatively argues that defendant's plea was a "capitulation" and should be set aside as the product of coercive influences which overwhelmed the will of a physically weak and emotionally distraught man. Essentially, the claim is that the trial judge should have allowed withdrawal of the plea in the interest of justice. We disagree, concluding that the trial judge did not abuse his discretion in denying the motion to withdraw.
An examination of the record of the guilty plea reveals a meticulous effort on the part of the trial judge to explain the rights waived and possible consequences. Defendant's responses satisfied the judge that his plea was voluntary and was offered in awareness of its consequences.[4]
The trial judge considered and rejected the contention that defendant's plea resulted from a sense of hopelessness due to inadequate representation by his original lawyer. The showing made at the hearing on the motion to withdraw the guilty plea did not satisfy the trial court that defense counsel's level of preparation was so inadequate as to render him unable to advise the defendant effectively concerning his guilty plea. Although the charge was dormant for about 18 months, there was over a month between the arraignment and the date set for trial. Compare State v. Winston, 327 So.2d 380 (La.1976).
As to defendant's physical condition, he may have suffered from various ailments, but there has been no showing that his state of health substantially impaired his effective participation in his defense. See State v. Karno, 342 So.2d 219 (La.1977). His illness may have indeed made the burden of trial more difficult, but the trial court was satisfied that it was not so severe as to deprive the defendant of the ability to understand the rights waived and other consequences of his guilty plea. The evidence regarding defendant's physical condition does not warrant a conclusion that defendant's weakened physical condition produced an involuntary guilty plea.
It is important to remember that the defendant chose, with the advice of counsel, between going to trial for selling marijuana to a police agent and pleading guilty with an agreed sentence. For a defendant, a guilty plea often involves a choice between undesirable alternatives. The fact that neither road offers the prospect of a pleasant journey does not render the plea involuntary as a matter of law.
*831 The United States Supreme Court has upheld the validity of plea bargaining, despite the undeniable pressures imposed by the choice to be made. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1974); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The difficulty of choice is exactly why counsel's role at the guilty plea is absolutely critical in assuring that the defendant is able to weigh his options intelligently. In the Bordenkircher decision the Court commented:
"Plea bargaining flows from `the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial." 434 U.S. at 363, 98 S.Ct. at 667 (citations omitted).
When a defendant enters a counselled plea of guilty, this court will review the quality of counsel's representation in deciding whether the plea should be set aside.[5] Here, defendant did not establish that counsel's representation was not within the range of competence demanded of attorneys in criminal cases.[6] See Moore v. United States, 432 F.2d 730 (3rd Cir. 1970). The trial judge therefore did not abuse his broad discretion in denying defendant's request to withdraw his guilty plea. C.Cr.P. art. 559; State v. Wade, 364 So.2d 575 (La.1978); State v. DeManuel, 321 So.2d 506 (La.1975).
Compliance with Sentencing Guidelines
It is tempting to dispose of this matter by simply holding that the sentencing guidelines statute, C.Cr.P., art. 894.1, was not designed to guide and assist the trial court in approving agreements as to recommended sentence, reached by the prosecution and the defense after negotiations, and therefore need not be followed in cases involving imposition of the recommended sentence.[7] Despite the logic of this position, we are not compelled to reach that issue in this case, because the trial judge adequately complied with C.Cr.P. art. 894.1.[8]
In a written judgment imposing the concurrent five-year terms agreed upon during the plea negotiations the trial judge stated:
"The Defendant, having been regularly charged in a Bill of Information, regularly filed, with the crime of VIOLATION OF THE LOUISIANA UNIFORM CONTROLLED DANGEROUS SUBSTANCES LAW (DISTRIBUTION OF MARIJUANA) and having been duly arraigned, and having entered a plea of *832 GUILTY to said charge and after having made a thorough study of the defendant, the Court feels there is an undue risk, that during the period of a suspended sentence or probation, the defendant will commit another crime.
"The conclusion being reached, in part, based upon the fact that Beatty was convicted of Grand Larceny in Mississippi and served penitentiary time in that state. The Court also notes that this is one of two distribution of marijuana charges that Beatty pled guilty to on this date. He was arrested on February 2, 1978, for this crime and released on bail bond. While on bail bond, he distributed marijuana again, and was arrested on July 9, 1979, indicating to the Court that he intends to persist in the business of dealing in drugs.
"The defendant also is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. The Court is reliably informed that Beatty sometimes uses drugs himself, which is contraindicative to his poor health. Custodial care will prevent him from using drugs.
"A lesser sentence will deprecate the seriousness of the defendant's crime, it being noted that Beatty has been given a five-year sentence on each of two charges, but the Court providing that the sentence shall run concurrently. Hence, he has been given only two and a half years for each crime."
Defendant contends, however, that even if the written judgment contained a statement of considerations taken into account and the factual bases therefor sufficient to comply with the statute, the judgment was not written until after sentencing in court. Compliance with C.Cr.P. art. 894.1 requires that the reasons and facts considered be stated contemporaneously with the imposition of sentence, the purpose being to give defense counsel an opportunity to respond or to correct any inaccurate information prior to sentencing. Here, the written judgment was filed the day of sentencing. Moreover, the trial court's statements at sentencing reflected essentially the same considerations and facts incorporated in written judgment. While the trial judge's statement that defendant while on parole "distributed marijuana again" is inaccurate, the judge evidently was placing emphasis on the continuing drug activity heralded by the second arrest.
This assignment is without merit.
Excessive of Sentence
It is also tempting to dispose of this issue on the basis that defendant is bound by his agreement with the prosecution and that, absent a showing that would entitle him to have the plea set aside, he cannot complain of the sentence imposed. However, we need not decide the issue because the defendant's sentence is plainly supported by the record and the articulated reasons of the trial court.
Defendant was previously convicted of the felony of grand larceny in Mississippi. Although the prior conviction occurred many years before the offenses in question, that conviction can and should be considered.[9] Further, defendant's possession of marijuana with intent to distribute, while on bail pending disposition of his initial charges, leads us to conclude that the judge did not act harshly and excessively in sentencing the defendant to serve concurrent five-year prison sentences.[10] Defendant's *833 willingness to engage in the same type of criminal activity while on bail certainly manifests a willingness to flout the law and justifies a more severe sentence than may be appropriate for a one-time offender whose conduct pending trial reflects a greater respect for law. Despite the defendant's poor health and disabilities, he has no license to possess and distribute controlled dangerous substances.
The sentence actually falls within the lower range, in view of the severe maximum sentence which could have been imposed.[11] Thus, the record in this case does not reflect any manifest abuse of discretion which would warrant disturbance of the sentencing discretion exercised by the trial judge. See State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Jones, 381 So.2d 416 (La.1980).
Accordingly, the defendant's conviction and sentence are affirmed.
NOTES
[1] This court has examined the colloquy which was introduced during the hearing on defendant's motion to withdraw the plea and notes that the trial judge exhaustively canvassed the rights being waived by acceptance of the plea and the consequences of the plea. The colloquy reflects an assiduous effort by the trial judge to assure himself that defendant's plea was voluntary.
[2] The motion was timely, inasmuch as it was filed and disposed of prior to imposition of sentence. C.Cr.P. art. 559.
[3] Because defendant did not reserve the right at his plea to urge on appeal any error in the denial of his oral motion for a continuance, that denial will be considered only in deciding whether the trial judge abused his wide discretion in denying defendant's motion to withdraw his guilty plea.
[4] Defendant does not challenge the adequacy of the "Boykin-Jackson" examination conducted by the judge. See State ex rel. Jackson v. Henderson, above.
[5] We will also, of course, review the record to assure compliance with our decision in State ex rel Jackson v. Henderson, above. See State v. Williams, 384 So.2d 779 (La.1980).
[6] For a thorough discussion of the factors employed to evaluate the competence of counsel, see Justice Dennis' thoughtful and scholarly decision in State v. Myles, 389 So.2d 12 (La. 1980).
[7] In State v. Jones, 381 So.2d 416 (La.1980) we held that compliance with the guidelines statute was not required in cases in which the sentence imposed was not "apparently severe".
[8] Clearly, the sentence agreed upon by the parties is not binding upon the judge, who must consider the overall interests of society and the individual defendant in deciding whether to accept a sentence recommendation. In this regard the guidelines statute may greatly assist the judge in deciding whether to approve and follow the plea agreement concerning an appropriate sentence. Of course, if the trial court decides to reject the proposed sentence, he may refuse to accept the guilty plea unless it is offered with the understanding that the recommendations regarding sentence are not binding on the court. See F.R.Cr.P. 11(e).
[9] The Legislature amended the codal articles on probation in 1970 to prohibit trial judges from imposing suspended sentences except for first felony offenders. See C.Cr.P. art. 893. An exception to the rule barring probation for second offenders exists in cases in which the accused is committed to a narcotics rehabilitation program. The limitation does not appear to provide an exception for out-of-state felony convictions or for felony convictions which are over a specified number of years old. Compare R.S. 15:529.1; C.Cr.P. art. 893 (as enacted by Acts 1966, No. 310). See State v. Jones, 327 So.2d 417 (La.1976).

Thus, we perceive a legislative directive that second felony offenders should generally not be given probation, even if the former conviction occurred in the distant past.
[10] As pointed out in State v. Underwood, 353 So.2d 1013 (La.1978), concurrent as opposed to consecutive sentences are preferred in cases of multiple convictions for non-violent felonies.
[11] Each count was punishable by a term of imprisonment at hard labor for not more than 10 years, or by a fine of not more than $15,000, or both. See R.S. 40:966 A and B.